**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BARBARA J. BELGE,

                Plaintiff,

vs.                                    Case No.  3:09-cv-529-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

Barbara J. Belge ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits.  Her alleged inability to work is based on "panic disorder, social anxiety disorder, and depression," Transcript of Administrative Proceedings (Doc. No. 9; "Tr.") at 31, as well as "schizophrenia," Memorandum in Support of Complaint (Doc. No. 15; "Pl.'s Mem.") at 2.  On June 14, 2006, Plaintiff filed an application for disability insurance benefits.  Tr. at 19.  Plaintiff alleged an onset date of April 20, 1998.  Tr. at 19.  Plaintiff was insured for disability insurance benefits through December 31, 2003.  Tr. at 19.

An Administrative Law Judge ("ALJ") held a hearing on October 30, 2008, Tr. at 218-67, and issued a Decision on February 4, 2009, finding Plaintiff not disabled through the date of last insured.  Tr. at 19-28.  On April 13, 2009, the Appeals Council denied Plaintiff's request for review.  Tr. at 4-6.  On June 11, 2009, Plaintiff commenced this action under 42

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 11), and the Order of Reference entered on September 23, 2009 (Doc. No. 12).

U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision.  Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff, who was fifty-five years old at the time of her hearing before the ALJ, Tr. at 229, frames four issues in her memorandum in support of reversing the ALJ's Decision.  See Pl.'s Mem. at 1.  It appears, however, there are three broad issues that require the Court's analysis:  (1) whether the ALJ stated with particularity the weight afforded each medical opinion in the record and provided adequate reasons in support of the weight given to each medical opinion; (2) whether the vocational expert's ("VE('s)") testimony regarding the numbers of jobs available in 1998 that Plaintiff could have performed was "vague and arbitrary"; and (3) whether the Appeals Council erred in failing to remand the case to the ALJ to consider newly submitted evidence from Plaintiff's treating physician.  See id. at 1, 8-24. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that additional explanation is needed before it can be determined whether substantial evidence supports the ALJ's findings with respect to the weight given to the medical opinions in the record, and additional explanation is needed to determine whether a significant number of jobs existed in the economy that Plaintiff could have performed.  Accordingly, the Commissioner's final Decision is due to be reversed and remanded.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: (1) is currently employed; (2) has a severe impairment;

(3) has an impairment or combination of impairments that meets or medically equals one listed in the regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See 20 C.F.R. § 404.1520; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff did not engage in substantial gainful activity from April 20, 1998 (the alleged onset date) through December 31, 2003 (the date last insured). Tr. at 21. At step two, the ALJ found Plaintiff suffered from the following severe impairment: "schizophrenia." Tr. at 21. At step three, the ALJ stated Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 23.

The ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

to perform a full range of work at all exertional levels but with the following nonexertional limitations: only occasional contact with the public and coworkers, no quotas, and a low stress environment. Independent work would be best, but not restricted to that.

Tr. at 24. At step four, the ALJ found Plaintiff was not capable of performing her past relevant work as a secretary. Tr. at 26. At step five, the ALJ relied on the testimony of a VE and determined there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed, considering her age, education, work experience, and RFC. Tr. at 27. Namely, Plaintiff could have worked as a mail sorter, a cleaner I, and a kitchen helper. Tr. at 27. In the Decision, the ALJ concluded Plaintiff was

not under a disability[2] from April 20, 1998 through December 31, 2003, the date last insured. Tr. at 28.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence'[.]"  Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

---

[2]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

## IV.  Discussion

The Court must address the following issues: (1) whether the ALJ stated with particularity the weight afforded each medical opinion in the record and provided adequate reasons in support of the weight given to each medical opinion; (2) whether the VE's testimony regarding the numbers of jobs available in 1998 that Plaintiff could have performed was "vague and arbitrary"; and (3) whether the Appeals Council erred in failing to remand the case to the ALJ to consider newly submitted evidence from Plaintiff's treating physician. See Pl.'s Mem. at 1, 8-24.  Each issue is addressed in turn.

### A.    The ALJ's Consideration of Medical Opinions

Plaintiff asserts in substance that the ALJ did not state with particularity the weight afforded each medical opinion in the record and did not offer adequate reasons in support of whatever weight was given to each medical opinion. See Pl.'s Mem. at 8-21.  The record contains medical documentation from one treating physician, Tr. at 151-52, 171-217; one examining psychologist, Tr. at 116-18; and two nonexamining psychologists, Tr. at 119-36, 153-70.

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[t]he opinions of examining physicians are generally given more weight than nonexamining physicians[4]";

---

[3]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)," including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment.  20 C.F.R. § 404.1527(a)(2).

[4]    A nonexamining source is a "physician, psychologist, or other acceptable medical source who has not examined [the claimant] but provides a medical or other opinion in [the claimant's] case."  20 C.F.R. § 404.1502.

treating physicians[5] receive more weight than nontreating physicians[6]; and specialists on issues within their areas of expertise receive more weight than nonspecialists." Preston v. Astrue, No. 2:09-cv-0485-SRW, 2010 WL 2465530, at *6 (M.D. Ala. June 15, 2010) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(d)(2).  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician.  Id.

"The ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error."  Bedasie v. Astrue, No. 8:08-cv-1737-T-TBM, 2009 WL 3028317, at *5 n.5 (M.D. Fla. Sept. 17, 2009) (unpublished) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)).  If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for

---

5       A treating source is a "physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation [to the claimant] and who has, or has had, an ongoing treatment relationship with [the claimant,]" as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  20 C.F.R. § 404.1502.

6       A nontreating source is a "physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."  20 C.F.R. § 404.1502.

discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  If the opinions of treating physicians are discounted, the ALJ must state with particularity the weight afforded the opinions of "non-treating doctors, i.e., doctors performing consultative examinations and doctors reviewing the medical record, . . . and failure to do so is reversible error."  Bedasie, 2009 WL 3028317, at *5 (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)); see also MacGregor, 786 F.2d at 1053.

Here, the ALJ reviewed four medical opinions.  The ALJ stated that she gave the treating physician's opinion "appropriate weight."  Tr. at 26.  The particular weight given to the treating physician's opinion is unclear, and consequently, the Court cannot determine whether and to what degree the ALJ discounted the treating physician's opinion.  Moreover, if the ALJ intended to give the treating physician's opinion less than considerable or substantial weight, she was required to state the particular weight given to the examining and nonexamining psychologists' opinions.  See Bedasie, 2009 WL 3028317, at *5.  The ALJ did not state the weight assigned to the examining psychologist's opinion.  See Tr. at 21-22.  Although she gave the opinions of the nonexamining psychologists "some weight," Tr. at 26, the ALJ did not provide adequate reasons in support of the weight given.  The Court analyzes the medical opinions in the following order:  (1) the treating physician; (2) the examining psychologist; and (3) the two nonexamining psychologists.

### 1.    Treating Physician

Plaintiff argues that "[t]he ALJ erred in failing to articulate good cause for not crediting the opinion" of Plaintiff's treating physician, George M. Joseph, M.D. ("Dr. Joseph"). Pl.'s Mem. at 14. In the Decision, the ALJ stated that she "considered the opinion of Dr. Joseph and [gave] it appropriate weight." Tr. at 26. The Commissioner asserts that the ALJ found conflicts between Dr. Joseph's opinion and his ongoing treatment notes. Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") at 10. The Commissioner explains that, although "the ALJ did not label [inconsistencies between Dr. Joseph's opinion and his treatment notes,] she did identify numerous inadequacies in Dr. Joseph's treatment and treatment notes." Id.

Plaintiff was referred to Dr. Joseph by her employer in 1993 because she "just started freaking out." Tr. at 232. Plaintiff maintained a relationship with Dr. Joseph until May 2008. Tr. at 171. Plaintiff was treated by Dr. Joseph for panic disorder, social anxiety disorder, and depression. See Tr. at 110, 113. Dr. Joseph's treatment notes reflect that between October 1997 and May 2008, Plaintiff had approximately forty-five sessions with Dr. Joseph, either in person or over the telephone, regarding treatment and prescription updates. Tr. at 171-209. On September 11, 2006, Dr. Joseph completed a Treating Source Mental Health Report for the [Florida] Division of Disability Determinations. Tr. at 151-52. Dr. Joseph diagnosed Plaintiff with Schizoaffective Disorder. Tr. at 152. Dr. Joseph opined that Plaintiff could perform light housework and care for herself, but was not capable of sustaining work activity for eight hours per day, five days per week. Tr. at 152.

On February 13, 2008, Dr. Joseph completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) ("Medical Assessment"). Tr. at 210-12. Dr. Joseph opined

that Plaintiff has the following extreme limitations:  relating to coworkers; dealing with stress at work; behaving in an emotionally stable manner; and relating predictably in social situations.  Tr. at 210-12.  Dr. Joseph found Plaintiff had the following marked limitations: following work rules; dealing with the public; using judgment; interacting with supervisors; functioning independently; maintaining attention/concentration; understanding, remembering, and carrying out complex job instructions; and demonstrating reliability.  Tr. at 210-12.   Dr. Joseph opined that Plaintiff had the following moderate limitations: understanding, remembering, and carrying out detailed, but not complex, job instructions; understanding, remembering, and carrying out simple job instructions; and maintaining personal appearance.  Tr. at 211-12.

In a May 12, 2008 letter to Plaintiff's counsel, Dr. Joseph stated he worked with Plaintiff "over a number of years" and diagnosed her with "Schizophrenia, Residual Type." Tr. at 213.  Dr. Joseph opined that Plaintiff's disorder "has always caused an extreme sensitivity in inter personal relationships, and frequent episodes of paranoid ideation, and outbursts of rage."  Tr. at 213.  Dr. Joseph also opined Plaintiff has been "totally disabled for work since at least 1998."  Tr. at 213.  He noted that despite "substantial doses of anti psychotic and anti depressant medications . . . [Plaintiff] has been and remains disabled for work from the psychiatric standpoint."  Tr. at 213.

In a November 11, 2008 letter to Plaintiff's counsel, Dr. Joseph addressed his long treatment relationship with Plaintiff.  Tr. at 214.  Dr. Joseph stated he saw Plaintiff frequently in the mid 1990's "because of symptoms of depression, feelings of worthlessness, and paranoid ideations[.]" Tr. at 214.  He explained that the brevity of his treatment notes was due to the confidential nature of his relationship with Plaintiff.  Tr. at 214.  Dr. Joseph stated

that "it was clear she was suffering from paranoid Schizophrenia" and that she has a family history of the disorder.  Tr. at 214.  He further explained that while he "made every effort through use of psychotropic medication and supportive therapy to facilitate her ability to function in a work setting, it was clear to [him] that her condition was rendering work increasingly problematic and impossible to continue."  Tr. at 214.  Dr. Joseph stated that Plaintiff suffers from a "severe disorder" and that she "last worked in April 1998 [which] [he] believe[d] . . . was basically overdue due to her psychiatric condition."  Tr. at 214.  He concluded that Plaintiff "has been incapable of work from a psychiatric standpoint since at least April of 1998."  Tr. at 214.

The ALJ stated she considered Dr. Joseph's opinion, and she gave it "appropriate weight."  Tr. at 26.  However, the Court is unable to determine what "appropriate weight" means.  See Samuels v. Astrue, No. 3:08-cv-900-J-HTS, 2009 WL 1659620, at *3 (M.D. Fla. June 15, 2009) (unpublished) ("The Court will not endeavor to determine the appropriate weight that should be afforded the treating physician's opinions.") (citations omitted).  Although the ALJ attempted to justify the "appropriate weight" given to Dr. Joseph's opinion, Tr. at 26, the degree to which the ALJ credited Dr. Joseph's opinion is unclear.  Without further explanation as to the particular weight given to Dr. Joseph's opinion, the Court cannot determine whether the ALJ's Decision is supported by substantial evidence.[7]  Therefore, remand is required.  On remand, the ALJ shall clearly articulate the weight afforded Dr. Joseph's opinion.  If less than substantial or considerable weight, the ALJ shall provide adequate reasons, supported by substantial evidence, showing good cause.

_____

[7]        Although the Court does not endeavor to determine the specific weight the ALJ gave to Dr. Joseph's opinion, the undersigned notes that it appears the ALJ was attempting to discount the opinion of Dr. Joseph.

## 2. Examining Psychologist

Plaintiff was examined by Randi Most, Ph.D. ("Dr. Most") on November 4, 2003, at the direction of the Social Security Administration.  Tr. at 116-18.  The ALJ set forth a great deal of information in the Decision from Dr. Most's examination of Plaintiff.  See Tr. at 21-22, 116-18.  Plaintiff does not challenge the manner in which the ALJ addressed Dr. Most's opinion.  Plaintiff states in her brief, however, that the ALJ "did not seem to credit the opinion of Dr. Most (which is reasonable since Dr. Most did not even realize [Plaintiff]'s medical history of schizophrenia because he did not have the underlying progress notes to review)[.]"  Pl.'s Mem. at 8.  Although Plaintiff does not challenge the ALJ's failure to state the weight given to Dr. Most's opinion, the undersigned necessarily must review the ALJ's reliance on Dr. Most's examination.  This is required because of the ALJ's apparent attempt to discount the opinion of Dr. Joseph, Plaintiff's treating physician.  See Bedasie, 2009 WL 3028317, at *5 (stating that the ALJ must state with particularity the weight afforded examining physicians if treating physicians' opinions are discounted).

Dr. Most reported that Plaintiff drove herself to the appointment and that she was cooperative throughout the session.  Tr. at 117.  Plaintiff reported she had been depressed since 1992 and had not had any psychotherapy with a therapist since 1998.  Tr. at 116.  Plaintiff rated her depression as an eight to ten on a scale of ten and reported  "[a] loss of energy, crying spells, dysphoria, and lack of motivation."  Tr. at 116.  Plaintiff stated her preference for staying at home, but that she was able to "go out" if necessary.  Tr. at 116.  Plaintiff admitted "being violent towards her husband two or three times per year."  Tr. at 116.  Plaintiff described "significant family conflict including unresolved issues from being abused by her mother as a child."  Tr. at 118.  Plaintiff stated she could go grocery shopping,

prepare meals, play bingo, and work in the garden. Tr. at 117. She stated she was able to maintain her personal hygiene, perform household chores, and drive a car. Tr. at 117. Plaintiff reported that reading was challenging due to her difficulty concentrating. Tr. at 117. Plaintiff stated she could manage money, although her husband managed the family finances. Tr. at 117. Dr. Most noted the following about Plaintiff's mental status: "[a]ffect was euthymic[;] speech was logical and unimpaired[;] no tics, tremors, or involuntary motor movements noted and gait was normal[; and] no hallucinations, delusions, or paranoia noted and behavior was appropriate." Tr. at 117. Dr. Most also found Plaintiff was "able to retain only [one] out of [three] objects in five minutes and could only identify [one] of the other [two] multiple choices." Tr. at 117. Plaintiff's "similarity definition [wa]s fair," she "interpret[ed] proverbs abstractly," and she stated "the days of the week forward and backward." Tr. at 117. Dr. Most diagnosed Plaintiff with "Dysthymic Disorder R/O Major Depression-Recurrent" and "Panic Disorder Borderline Personality Features." Tr. at 117. Dr. Most concluded that Plaintiff had an "unstable affect, poor anger management, and difficulties coping with stress. Characterological issues are likely to be contributing to this clinical picture." Tr. at 118. Dr. Most stated that because Plaintiff had not sought part-time or less stressful work, it was unclear whether she was capable of working. Tr. at 118. Dr. Most stated that Plaintiff would benefit from "cognitive behavioral treatment of her panic disorder and family conflicts," in addition to her medications. Tr. at 118.

In the Decision, the ALJ recounted the majority of Dr. Most's observations of Plaintiff. Tr. at 21-22. However, the ALJ did not state whether she was giving any weight to Dr. Most's opinion. See Tr. at 21-22. Since it appears the ALJ attempted to discount Dr. Joseph's opinion to some degree, as noted above, she was required to state with

particularity the weight afforded Dr. Most's opinion.  See Bedasie, 2009 WL 3028317, at *5.

Further, the ALJ even recognized that opinions from nonexamining sources "do not as a

general matter deserve as much weight as those of examining or treating physicians," Tr.

at 26, but gave "some weight to the nonexamining psychologists' opinions without stating

the weight she gave Dr. Most's opinion.  See Tr. at 26.  The Court is unable to determine

whether the ALJ's Decision is supported by substantial evidence without further explanation

of the ALJ's analysis of Dr. Most's opinion.  As such, remand is required.  On remand, the

ALJ shall clearly articulate the weight afforded Dr. Most's opinion, and provide adequate

reasons, supported by substantial evidence, for the weight given.

### 3.    Nonexamining Psychologists

Plaintiff argues that "[e]ven though the Commissioner specifically credited the opinion

of the state agency psychologists, the Commissioner created [an RFC] assessment that is

inexplicably inconsistent with both of the state agency psychologists' opinions and fails to

even acknowledge the inconsistencies."  Pl.'s Mem. at 1, 8.  In the Decision, the ALJ stated

that "although [the state agency psychologists] were nonexamining [sources], and therefore

their opinions [did] not as a general matter deserve as much weight as those of examining

or treating physicians, [their] opinions do deserve some weight, particularly in a case like this

in which there exists a number of other reasons to reach similar conclusions."  Tr. at 26.

The Commissioner contends the ALJ specified the weight she gave the state agency

psychologists' opinions, and that their opinions were consistent with the ALJ's findings.  See

Def.'s Mem. at 7-8.

The two nonexamining, state agency psychologists retained to complete a mental

RFC assessment of Plaintiff were Patricia Boger, Ph.D. ("Dr. Boger") and Alan Harris, Ph.D.

("Dr. Harris").  <u>See</u> Tr. at 133-36, 153-56.  Each mental RFC assessment consisted of twenty categories related to understanding and memory; sustained concentration and persistence; social interaction; and adaptation.  Tr. at 133-34, 153-54.  Each psychologist assigned a rating to each category:  not significantly limited, moderately limited, or markedly limited, depending on the degree of Plaintiff's limitation.  Tr. at 133-34, 153-54.  Alternatively, if the evidence did not indicate a degree of limitation as to a specific category, each psychologist could choose either "no evidence of limitation in [that] category" or "not ratable on available evidence."  Tr. at 133-34, 153-54.

Of the twenty categories rated, Dr. Boger determined Plaintiff was moderately limited in three categories, not significantly limited in fifteen categories, and found no evidence of limitation in two categories.  Tr. at 133-34.  The three moderately limited categories were the following: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) the ability to accept instructions and respond appropriately to criticism from supervisors.  Tr. at 133-34.

Of the twenty categories rated, Dr. Harris determined Plaintiff was moderately limited in eight categories and not significantly limited in twelve categories.  Tr. at 153-54.  The eight moderately limited categories were the following: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; (3) the ability to maintain attention and concentration for extended periods; (4) the ability to work in coordination with or proximity to others without being distracted by them; (5) the ability to interact appropriately with the general public; (6) the ability to accept instructions and respond appropriately to

criticism from supervisors; (7) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (8) the ability to respond appropriately to changes in the work setting.  Tr. at 153-54.

The ALJ found Plaintiff's RFC to be the following: Plaintiff could "perform a full range of work at all exertional levels but with the following nonexertional limitations: only occasional contact with the public and coworkers, no quotas, and a low stress environment. Independent work would be best, but not restricted to that."  Tr. at 24.  Although the ALJ stated she gave the opinions of Dr. Boger and Dr. Harris "some weight," Tr. at 26, she did not adequately set forth the reasons for giving their opinions such weight.  See Bedasie, 2009 WL 3028317, at *5.  Failure to do so constitutes reversible error.  See id.  The ALJ generally mentioned that there existed in the record "other reasons to reach similar conclusions" as those reached by Dr. Boger and Dr. Harris, Tr. at 26, but the ALJ did not identify the reasons.  This thwarts judicial review because the undersigned cannot determine whether substantial evidence supports the ALJ's Decision without further explanation as to the specific reasons for giving Dr. Boger's and Dr. Harris's opinions "some weight."

Moreover, the absence of specific reasons for giving "some weight" to Dr. Boger's and Dr. Harris's opinions is further complicated for two reasons.  First, it is unclear to which part or parts of Dr. Boger's and Dr. Harris's opinions the ALJ gave "some weight."  See Preast v. Comm'r of Soc. Sec., No.8:08-cv-999-T-24GJK, 2009 WL 3028315, at *15 (M.D. Fla. Sept. 16, 2009) (unpublished) (remanding the case because the ALJ gave "some weight" to the opinions of multiple doctors, but did not "specify with sufficient particularity what portion of [the] [doctor]s' opinions he accord[ed] weight and why").  Consequently, the "Court [does not have the means] to make an informed decision" as to which part or parts

of Dr. Boger's and Dr. Harris's opinions the ALJ credited, and which part or parts of their opinions she discounted. See id.

Second, the ALJ's failure to reconcile apparent inconsistencies between the ALJ's RFC assessment and Dr. Boger's and Dr. Harris's RFC assessments frustrates judicial review. For example, Dr. Harris stated in his narrative that Plaintiff could not work with the public, Tr. at 155, but the ALJ only limited Plaintiff to "occasional contact with the public and coworkers," Tr. at 24. It appears Dr. Harris found Plaintiff more restricted in this regard than the ALJ limited her to in his RFC assessment. In addition, Dr. Boger found Plaintiff moderately limited in her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at 134. However, the ALJ did not even address Plaintiff's ability to complete a normal workweek, although she limited Plaintiff to "no quotas." Tr. at 26.

Because the ALJ did not offer adequate reasons for giving Dr. Boger's and Dr. Harris's opinions "some weight," remand is required. On remand, the ALJ shall provide adequate reasons, supported by substantial evidence, for the weight given respectively to Dr. Boger's opinion and Dr. Harris's opinion.[8]

### B.      Testimony of the VE

Plaintiff argues the ALJ "erred in relying on [VE] testimony that was vague and arbitrary." Pl.'s Mem. at 1, 21. Specifically, Plaintiff deems speculative and unsupported the VE's testimony that the number of jobs available in 1998 that Plaintiff could have performed

---

[8]        The ALJ must separate her analysis of the opinions of Dr. Boger and Dr. Harris and articulate the weight given to each opinion. If the ALJ gives "some weight" to each of the opinions, she must specify to which part or parts of Dr. Boger's and Dr. Harris's respective opinions she is giving weight and provide adequate reasons for the weight given. See Preast, 2009 WL 3028315, at *15.

could be determined by reducing the number of jobs available at the time of the hearing by one-third. See id. at 21.

At step four of the sequential inquiry, the ALJ must determine whether a claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines the claimant cannot perform past relevant work, the ALJ must proceed to step five and determine whether the claimant can perform any other work, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can perform any other work, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy, either in the region where the claimant lives or other regions in the country. 20 C.F.R. §§ 404.1560(c)(2), 404.1566(a). The ALJ may use the services of a VE to determine whether significant numbers of jobs exist in the national economy. See 20 C.F.R. § 404.1566(e). When determining whether significant numbers of jobs exist, the ALJ may take administrative notice of reliable job information available from various publications, including the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor. 20 C.F.R. § 404.1566(d). In addition, the Regulations allow the ALJ to rely on a VE for his knowledge or expertise. Curcio v. Astrue, No. 09-15506, 2010 WL 2788162, at *2 (11th Cir. July 15, 2010) (unpublished) (citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.")).

Here, the ALJ retained the services of Mark Capps ("Mr. Capps" or "VE") to aid the ALJ in performing steps four and five of the sequential inquiry. See Tr. at 250-62. At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work based

on the testimony of the VE.  Tr. at 26.  The ALJ then proceeded to step five to determine whether there were jobs that existed in the national economy that Plaintiff could have performed.  Tr. at 27.  The VE testified that Plaintiff could have worked as a mail sorter (DOT # 209.687-026); a cleaner I (DOT # 919.687-014); and a kitchen helper (DOT # 318.687-010).  Tr. at 254-55.  The VE estimated that nationally at the time of the hearing (October 30, 2008) there were 26,000 jobs available as a mail sorter; 138,000 jobs available as a cleaner I; and 82,000 jobs available as a kitchen helper.  Tr. at 254-55.  The VE offered the following testimony about the number of jobs available at the time of the hearing versus the number of jobs available in 1998:

> Q.  Are those current numbers?
>
> A.  No, ma'am.  These are new numbers, but I've got a theory on what –
>
> Q.  Okay.
>
> . . .
>
> Q.  Okay.  Now what's your theory about the numbers?
>
> A.  I looked at some 1998 statistics when I was – you know, I think it's really going to be difficult to break down exactly what the numbers are for those years.  I believe you can take the numbers and to be completely fair reduce these numbers by one[-]third.
>
> Q.  Okay.
>
> A.  And I think that would be a fair estimate of the numbers that may have been, you know, close.  But that's my theory on that.
>
> Q.  All right.
>
> A.  Taking about a third off.
>
> Q.  Okay.  Otherwise, are these jobs consistent with the [DOT]?
>
> A.  Yes.

Tr. at 254-56.   In the Decision, the ALJ stated the following regarding the VE's testimony:

> Although the [VE]'s testimony is inconsistent with the information contained in the [DOT], there is a reasonable explanation for the discrepancy.  The impartial [VE] testified he looked at the 1998 statistics, but that it was difficult to get numbers for those years. [The VE] stated that the given numbers could be reduced by [one-third] to get the 1998 numbers.

Tr. at 27.

The ALJ suggested there was an inconsistency between the DOT and the VE's testimony. See Tr. at 27.  The Court disagrees.  The VE's testimony regarding the types of jobs and numbers of jobs currently available at the time of the hearing was consistent with the information contained within the DOT.  The problem was that the VE did not have a complete grasp on the 1998 statistics with regard to numbers of jobs in the national economy.  It is unclear whether a one-third reduction in the number of jobs available at the time of the hearing was consistent with the actual numbers of jobs available in 1998.  The undersigned recognizes that as an expert, the VE is entitled to draw on his own knowledge, experience, and expertise.  Curcio, 2010 WL 2788162, at *2.  A review of Mr. Capps's curriculum vitae reveals that he is adequately qualified as a VE.  Tr. at 53.  Notwithstanding Mr. Capps's qualifications, his testimony regarding the number of jobs available in 1998 is equivocal at best.  He appears to have simply guessed as to the number of jobs available.  Mr. Capps testified it was "difficult to break down exactly what the numbers are for those years," but he did not state why it was difficult.  Tr. at 255.  Mr. Capps stated he "looked at some 1998 statistics" but did not state what other efforts he made to determine "what the numbers are for those years."  Tr. at 255.  Mr. Capps believed his opinion "would be a fair estimate of the numbers that may have been . . . close," Tr. at 255, but the Court is not

satisfied with this unexplained estimation.  Although a VE is entitled to rely on his own expertise, he should still have an articulatable basis for his opinion.  On remand, the Commissioner shall determine the basis for Mr. Capps's estimation that a one-third reduction in the number of jobs available at the time of the hearing is an accurate depiction of the number of jobs available in 1998 that Plaintiff could have performed and determine whether that basis is reliable.

### C.    Review by the Appeals Council

Plaintiff asserts that the Appeals Council "erred in failing to remand the case to the ALJ despite newly submitted evidence from Dr. Joseph."  Pl.'s Mem. at 23.  "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record."  Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (quotation and citations omitted).

"[A] federal district court must consider evidence not submitted to the [ALJ] but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  Id. at 1258.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  See id. at 1262.

Since this case is due to be remanded, the Court does not analyze the actions of the Appeals Council.  In light of the foregoing, on remand, the Commissioner shall appropriately consider the new evidence submitted to the Appeals Council after the ALJ's Decision was rendered, and the potential effects the new evidence may have on allocating weight to the four medical opinions.

## V.  Conclusion

The ALJ must state with particularity the weight given to the opinions of Dr. Joseph and Dr. Most, and the reasons in support of the weight given.  Also, further explanation from the ALJ is needed as to the reasons for giving Dr. Boger's and Dr. Harris's opinions "some weight" and for any inconsistencies between the ALJ's Decision and Dr. Boger's and Dr. Harris's opinions.  Finally, an explanation is needed for the VE's testimony that a one-third reduction in the number of jobs available at the time of the hearing is an accurate depiction of the number of jobs available in 1998 that Plaintiff could have performed.  In accordance with the foregoing, it is

**ORDERED:**

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)    Reevaluate the evidence with respect to the opinion of and records from Dr. Joseph, explicitly stating what weight his opinion is given.  If the ALJ decides to discount Dr. Joseph's opinion, the ALJ must provide adequate reasons, supported by substantial evidence, showing good cause to discount Dr. Joseph's opinion;

> (B)    Reevaluate the evidence with respect to the opinion of and records from Dr. Most, explicitly stating what weight his opinion is given, and provide adequate reasons, supported by substantial evidence, for the weight given;

> (C)    Reevaluate the evidence with respect to the opinion of and records

from Dr. Boger, and provide adequate reasons, supported by substantial evidence, for giving his opinion "some weight";

(D)    Reevaluate the evidence with respect to the opinion of and records from Dr. Harris, and provide adequate reasons, supported by substantial evidence, for giving his opinion "some weight";

(E)    Elicit an explanation from the VE as to the basis for the estimation that a one-third reduction in the number of jobs available at the time of the hearing is an accurate depiction of the number of jobs available in 1998 that Plaintiff could have performed;

(F)    Evaluate the evidence submitted to the Appeals Council after the ALJ's Decision was rendered and consider it in determining the weight to be given to the opinions of Dr. Joseph, Dr. Most, Dr. Boger, and Dr. Harris; and

(G)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is directed to close the file.

3.    If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42. U.S.C. § 406(b).  See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on September 27, 2010.

James R. Klindt
**JAMES R. KLINDT**
United States Magistrate Judge

wlg

Copies to:

Counsel of Record